**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kristina R Brooks,<br><br>           Plaintiff,<br><br>v.<br><br>County of Pima,<br><br>           Defendant. | No. CV-20-00033-TUC-JGZ<br><br>**ORDER** |

In this Title VII discrimination action, Plaintiff Kristina Brooks asserts five claims of failure to promote based on gender against Defendant Pima County. Now pending before the Court are the parties' cross motions for summary judgment. Pima County filed a motion for summary judgment on all five claims. (Doc. 63.) Brooks filed a cross motion for partial summary judgment on three claims. (Doc. 82.) The motions are fully briefed.[1] For the following reasons, the Court will grant Pima County's motion in part, and deny Brooks' motion.

**I.     Background**

On October 28, 2013, Pima County IT Department hired Brooks as an IT-Applications Analyst. (Doc. 66, ¶ 1.)[2] Brooks received satisfactory or positive performance

---

[1] Pima County's cross motion for summary judgment, statement of facts, amended statement of facts, and reply are filed at Docs. 63, 64, 66, and 85. Brooks' statement of facts and exhibits, cross motion for summary judgment, and reply are filed at Docs. 69–81, 82, and 86.

[2] The facts set forth here are undisputed unless otherwise noted. The Court cites Pima County's statement of facts and not Brooks' statement of facts to avoid confusion because

reviews throughout her employment with Pima County. (Doc. 66, ¶ 9.) Brooks applied and interviewed for two Relationship Manager positions and a Computing Architect position. (Doc. 66, ¶¶ 10, 23, 35.) Pima County selected another candidate for these positions after scoring the candidates in panel interviews. (Doc. 66, ¶¶ 14, 22, 33, 46.)

In August 2017, Brooks applied for the first position, Relationship Manager 2017-764. (Doc. 66, ¶ 10.) She met the minimum qualifications and Pima County selected her and others for interviews. (Doc. 66, ¶ 11.) A male candidate, W.S.,[3] received the highest cumulative interview score. (Doc. 66, ¶ 18.) Brooks received the second highest score. (Doc. 66, ¶ 20.) In its motion for summary judgment, Pima County asserts that it selected W.S. and not Brooks for the position because W.S. had a higher interview score and supervisory experience. (Doc. 63 at 15.) Pima County's Statement of Facts and exhibits support only the statement that W.S. was selected because he had the highest cumulative interview score. (Doc. 66, ¶ 22.)

In February 2018, Brooks applied for Relationship Manager 2017-1130. (Doc. 66, ¶ 23.) She met the minimum qualifications and Pima County again selected her and others for interviews. (Doc. 66, ¶¶ 24, 27.) A male candidate, T.N., received the highest cumulative interview score. (Doc. 66, ¶ 29.) Brooks received the second highest score. (Doc. 66, ¶ 31.) Pima County asserts that it selected T.N. and not Brooks for the position because T.N. had a higher interview score and supervisory experience. (Doc. 63 at 15; Doc. 66, ¶ 33.) Pima County's Statement of Facts and exhibits support only the statement that T.N. was selected because he had the highest cumulative interview score. (Doc. 66, ¶ 33.)

On July 17, 2018, Brooks filed an EEOC charge against Pima County alleging it

---

Brooks' statement of facts and separate controverting facts are included in one document which contains two sets of numbered paragraphs: 1–59 for the controverting statement of facts and paragraphs 1–81 for the additional statement of facts. (*See* Doc. 69.) Pima County also amended its statement of facts, (Doc. 64), without explanation. It appears that the amended version is actually a supplement because it includes only two revised exhibits and a revised table of contents. (*See* Doc. 66). The Court thus cites Doc. 64 when referencing Pima County's exhibits, Doc. 66 when referencing Pima County's statement of facts, and Docs. 64 and 66 when referencing Pima County's amended exhibits.

[3] The Court uses initials to protect the privacy of third parties mentioned in this Order.

failed to promote her based on gender. (Doc. 64-64.) The charge pertained to the August 2017 and February 2018 Relationship Manager positions and alleged that Pima County selected lower-performing and less-qualified male candidates over her for both positions. (*Id.*) The charge also made broad allegations that Pima County's IT Department regularly passed over female employees for promotions and pay raises despite them having superior performance and qualifications compared to their male peers. (*Id.*)

In August 2018, Brooks applied for a Computing Architect position. (Doc. 66, ¶ 35.) The hiring process for this position included two rounds of interviews, with the first scored and the second unscored. (Doc. 66, ¶ 36.) Pima County selected Brooks and two others for the first round of interviews. (Doc. 66, ¶ 39.) A male candidate, B.P., received the highest cumulative score after the first round. (Doc. 66, ¶ 40.) Brooks received the second highest score. (Doc. 66, ¶ 42.) Pima County selected B.P. and Brooks for a second round of interviews. (Doc. 66, ¶ 43.) After the second round of interviews, Pima County selected B.P. for the position. (Doc. 66, ¶ 46.) In its motion for summary judgment, Pima County asserts that it selected B.P. and not Brooks because he had a higher score in the first round of interviews and supervisory experience. (Doc. 63 at 15.) Pima County, however, fails to provide any evidence in support of this factual assertion. In its Statement of Facts, Pima County does not state why B.P. was selected for the position, and the Court finds in the record no affidavits or declarations of decision-makers that state the basis for B.P.'s selection.

B.P. accepted the Computing Architect position and left vacant his previous role as Supervisor of Systems Administration. (Doc. 66, ¶ 55.) Another male employee, J.B., had applied and competed alongside Brooks for the positions of Relationship Manager 2017-1130 and Computing Architect. (Doc. 64-17, 64-23.) Brooks outscored him in the interviews for both positions. (*Id.*) Pima County assigned J.B. as the next Supervisor of Systems Administration in place of B.P. because of J.B.'s supervisory experience and existing job classification. (Doc. 63 at 16; Doc. 66, ¶ 55.) According to Pima County, the replacement did not require posting the position for recruitment or having an open and

competitive process because it was a reassignment of duties within J.B.'s current job classification of IT – Information Engineer. (Doc. 66, ¶ 55; Doc. 64-54.)

In 2018, Brooks also worked on a Quality Assurance program. (Doc. 66, ¶ 47.) The parties dispute much of the details regarding this program, including whether Brooks turned down the chance to lead it. (Doc. 66, ¶¶ 49–51; Doc. 69, ¶¶ 49–51.) It is undisputed, however, that Pima County discontinued the program and thus no other employees have led it since. (Doc. 66, ¶¶ 51–52; Doc. 69, ¶ 52; Oral Argument.)

On September 24, 2018, Pima County responded to Brooks' EEOC charge. (Doc. 64-44.) On November 25, 2018, Brooks resigned from her position with the Pima County IT Department. (Doc. 66, ¶ 58.) On October 21, 2019, the EEOC issued a Dismissal and Right to Sue Letter to Brooks. (Doc. 64-64.)

On January 21, 2020, Brooks filed this Title VII action for failure to promote based on gender discrimination, specifically identifying five incidents relating to the Relationship Manager 2017-764 position, Relationship Manager 2017-1130 position, Computing Architect position, Supervisor of Systems Administration position, and Quality Assurance program. (Doc. 1 at 2–3.) Brooks did not file any EEOC charges against Pima County other than the July 17, 2018 charge. (Doc. 66, ¶ 59; Doc. 69, ¶ 59.)

**II. Discussion**

This Court will grant summary judgment when the movant has shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that might affect the outcome of the case under existing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict in favor of the nonmoving party. *Id.* This decision is made without weighing the evidence or determining whether the employee's allegations are true. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1027 (9th Cir. 2006). A court presented with cross-motions for summary judgment should review each motion separately, giving the nonmoving party for each motion the benefit of all reasonable

inferences from the record. *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006).

### A. Pima County's Motion for Summary Judgment

A plaintiff has three requirements to survive summary judgment in a Title VII claim. First, a plaintiff must exhaust her administrative remedies. 42 U.S.C. § 2000e–5. Next, a plaintiff must establish a prima facie case under the *McDonnell Douglas* framework. *Chuang v. Univ. of California Davis, Bd. of Trs.*, 225 F.3d 1115, 1123–24 (9th Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Finally, a plaintiff must respond to her employer's nondiscriminatory reason for the adverse employment action by raising a genuine factual question as to whether the employer's reason is a pretext for discrimination. *Chuang*, 225 F.3d at 1126. The Court will address each requirement in turn.

#### 1. Administrative Remedies

Under Title VII, a plaintiff must exhaust her administrative remedies by filing a timely charge with the EEOC or an appropriate state agency. 42 U.S.C. § 2000e–5. "The administrative charge requirement serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002), *as amended* (Feb. 20, 2002). Courts construe the language of EEOC charges "with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *Id.* at 1100. And even when an employee seeks judicial relief for Title VII claims not listed in the original EEOC charge, the complaint "nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge." *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002).

In determining whether a plaintiff has exhausted her administrative remedies for an allegation absent in her EEOC charge, courts should consider a variety of factors. *B.K.B.*, 276 F.3d at 1100. Those factors include the alleged basis of discrimination, dates of discriminatory acts, perpetrators named in the charge, locations where alleged

discrimination occurred, and whether plaintiff's civil claims are reasonably related to the allegations in the EEOC charge to the extent that the civil claims are consistent with the plaintiff's original theory of the case. *Id.* "Whether a plaintiff in a Title VII action has timely exhausted her administrative remedies is an affirmative defense, so the defendant bears the burden of pleading and proving it." *Kraus v. Presidio Tr. Facilities Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1046 n.7 (9th Cir. 2009).

In a footnote, Pima County argues that Brooks failed to exhaust her administrative remedies for the claims relating to the Computing Architect position, Supervisor of Systems Administration position, and Quality Assurance program. (Doc. 63 at 2.) The basis of this contention is the fact that Brooks' EEOC charge only listed the Relationship Manager positions, as those were the only positions that Brooks had been denied at the time that she filed the charge. (*Id.*) On this point, Pima County argues that the Court should bar Brooks' remaining three claims because "[e]ach incident of failure to promote constitutes a separate unlawful employment practice," which prevents Brooks' EEOC charge from encompassing any future acts of discrimination. (*Id.*)

In response, Brooks asserts that the charge-filing requirement in Title VII claims is not a jurisdictional requirement but a mandatory claim-processing rule subject to waiver if not timely raised. (Doc. 82 at 2.) Brooks relies on *Fort Bend County, Texas v. Davis*, 139 S. Ct. 1843 (2019), which does not apply here. In *Davis*, the defendant raised this affirmative defense after more than three years of litigation and appellate review by the Fifth Circuit and Supreme Court. *Id.* at 1848. That is not the case here. Pima County properly raised this affirmative defense at the summary judgment stage. *See, e.g.*, *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (failure to exhaust in PLRA suits is an affirmative defense that should normally be raised at summary judgment); *Knox v. Contra Costa Cnty.*, No. 20-CV-01449-JCS, 2022 WL 2290686, at *9 (N.D. Cal. June 24, 2022) (defendant in Title VII suit timely raised the failure-to-exhaust affirmative defense at summary judgment).

The Court, however, will not grant summary judgment on claims three, four, and

- 6 -

five based on Pima County's failure-to-exhaust affirmative defense.[4] Pima County cited *National Railroad Passenger Corporation v. Morgan* to support its contention that each alleged failure-to-promote incident is a discrete discriminatory act requiring an EEOC charge. 536 U.S. 101, 114 (2002). But this Court does not construe *Morgan* so broadly. The plaintiff in *Morgan* sought to recover damages for discrete acts that had occurred more than 300 days *before* the date he filed his charge. *Id.* at 106. Here, Pima County asks the court to exclude acts that occurred months *after* Brooks filed her initial charge. (Doc. 63 at 2.) Unlike the *Morgan* plaintiff, who could have named the missing alleged acts in his EEOC charge, Brooks could not have included claims three through five, which had not yet occurred.

Whether this Court should exclude claims three through five turns on whether those claims were sufficiently "like or reasonably related" to the allegations in Brooks' original EEOC charge. *See Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1206 (9th Cir. 2016) (reversing district court's decision to exclude plaintiffs' Title VII claims based on failure-to-exhaust defense and remanding to determine whether later claims were "like or reasonably related" to the initial EEOC charge). The arguments within footnote one of Pima County's motion fail to address the factors a court must consider when making this determination. (*See* Doc. 63 at 2.) More specifically, Pima County failed to explain how Brooks' claims were not reasonably related despite the fact that the claims are all failure-to-promote claims that occurred within the same IT Department and one-year period. Pima County had the burden of proving its failure-to-exhaust affirmative defense and it failed to do so. *See Kraus*, 572 F.3d at 1046 n.7.

---

[4] However, to the extent that Brooks now presents the Quality Assurance program as a retaliation claim, (*see* Doc. 82 at 12; Oral Argument), the Court will grant summary judgment based on the failure-to-exhaust affirmative defense. Unlike the potentially related failure-to-promote claims based on gender discrimination, Brooks failed to identify or assert an unrelated retaliation claim in her EEOC charge. *See Scott v. Gino Morena Enters., LLC*, 888 F.3d 1101, 1112 (9th Cir. 2018). Because Brooks failed to exhaust her administrative remedies for a retaliation claim, (*see* Doc. 64-64), the claim will be dismissed.

### 2. *McDonnell Douglas* Factors

Under *McDonnell Douglas*, a plaintiff alleging disparate treatment under Title VII must establish a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802. A plaintiff must show that (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably. *Chuang*, 225 F.3d at 1123. A plaintiff generally need produce very little evidence to overcome an employer's motion for summary judgment. *Id.* at 1124. This is because the ultimate question in a Title VII discrimination case is most appropriately resolved through a searching inquiry conducted by a factfinder upon a full record. *Id.*

#### i. Relationship Manager and Computing Architect Positions

Pima County concedes all but the fourth *McDonnell Douglas* factor for the positions of Relationship Manager 2017-764, Relationship Manager 2017-1130, and Computing Architect. (Doc. 63 at 6.) For the fourth factor, Brooks must show that she was treated less favorably than a similarly situated individual outside her protected class. *Chuang*, 225 F.3d at 1123. "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 641 (9th Cir. 2003). "The employees need not be identical; they must simply be similar in all material respects." *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1125 (9th Cir. 2009).

Pima County's position is that it did not treat W.S., T.N., and B.P.—the male candidates who Pima County hired instead of Brooks for these three positions—more favorably than Brooks because it conducted the interview process for each position in compliance with the Pima County Merit System Rules and Administrative Procedures and it selected for each position the candidate with the highest interview score. (Doc. 63 at 8.) To support this contention, Pima County notes that W.S. and T.N. scored higher than Brooks in the single-round interviews for the Relationship Manager positions, and B.P. scored higher than Brooks in the first of two interviews for the Computing Architect position. (*Id.*)

Pima County's argument that it did not treat Brooks less favorably is unpersuasive. First, Pima County clearly did treat Brooks less favorably because it failed to promote her and selected W.S., T.N., and B.P. instead. (Doc. 82 at 7–8.) While the fact that the candidates were treated similarly during the interview process might signal the absence of discrimination, it does not negate the fact that Pima County preferred—and hence treated more favorably—other candidates over Brooks. Second, Pima County cites no authority stating that an employer's use of standard interview questions is dispositive on the issue of whether an employee is treated less favorably.[5] The Court thus declines to rule as a matter of law that Pima County's selection process could not treat Brooks less favorably.

Pima County also argues that Brooks is not similarly situated to W.S., T.N., and B.P. due to Brooks' purported lack of supervisory experience. There are two flaws with this argument that preclude summary judgment. First, Brooks factually disputes whether she lacked supervisory experience, (Doc. 82 at 3–4), and she has presented evidence to the contrary. For instance, Brooks' resume entry for Simpleview Inc. lists her as a "CMS Production Project Manager" and states that she "managed and launched projects," "[m]anaged . . . a team of developers," "[p]rovided goals for developers," and "boosted team morale by jumping into the trenches." (Doc. 64-37; Doc. 66-2.) A reasonable jury could conclude that this experience was supervisory, although not expressly listed as such. A genuine factual dispute thus remains.

Second, whether Brooks is similarly situated in all material respects cannot turn on a qualification immaterial to Pima County's final selection decision. Brooks need only show that she is similar to W.S., T.N., and B.P. in all material respects. *See Nicholson*, 580 F.3d at 1125. At oral argument, Pima County asserted that it selected the male employees for the positions at issue based on their higher interview scores, not because they had supervisory experience that Brooks lacked. Pima County cannot contend that supervisory experience was *immaterial* to Pima County's final selection decision but *material* in the

---

[5] In fact, Pima County stated at oral argument that no such rule exists and courts must look at each selection process individually to confirm whether it is fair and equitable.

- 9 -

similarly situated analysis.[6]

For these reasons, Brooks' prima facie discrimination case arising from the Relationship Manager 2017-764, Relationship Manager 2017-1130, and Computing Architect positions survives summary judgment.

### ii. Supervisor of Systems Administration Position

Pima County concedes all but the third and fourth *McDonnell Douglas* factors for Brooks' claim relating to the Supervisor of Systems Administration Position. (Doc. 63 at 13–14.) For these factors, Brooks must show that she was subject to an adverse employment action and that similarly situated individuals outside her protected class were treated more favorably. *Chuang*, 225 F.3d at 1123. To establish an adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

First, Pima County contends that J.B.'s reassignment to the Supervisor of Systems Administration position was not an adverse employment action for Brooks. (Doc. 63 at 13–14.) Pima County rests its position on the fact that it did not change J.B.'s pay or job classification when it reassigned him. (Doc. 63 at 13; Doc. 66, ¶ 56.) However, whether a challenged action is materially adverse depends not on specific employment classifications but upon the circumstances of the particular case. *See White*, 548 U.S. at 71.

Brooks argues that J.B.'s reassignment is a materially adverse employment action. (Doc. 82 at 10.) This reassignment provided J.B. with the responsibility of supervising employees and denied Brooks the opportunity to apply for the position. (Doc. 69, ¶ 56.) Further supporting the materially adverse nature of this employment action is the undisputed fact that Brooks had twice outperformed J.B. during the interviews for the

---

[6] As noted in Part I, Pima County has failed to produce any evidence as to the basis for B.P.'s selection over Brooks. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Thus, the Court cannot determine whether Brooks' supervisory experience was a material consideration for the Computing Architect position or evaluate Brooks' experience in comparison to B.P.'s.

Relationship Manager 2017-1130 and Computing Architect positions. (Doc. 64-17, 64-23.) Because Pima County relies heavily on its interview scores as a purportedly objective basis for its employment decisions, (Doc. 66, ¶¶ 22, 33, 46; Doc. 63 at 8–10, 15), a reasonable employee could find it materially adverse that, when a role with greater supervisory duties became available, her employer abandoned its objective interviews and reassigned to the role a male employee who consistently scored lower than her in interviews for supervisory positions.

Pima County also contends that Brooks is not similarly situated to J.B. because she lacks supervisory experience. (Doc. 63 at 14.) Yet, as discussed above, Brooks has raised her supervisory experience as a triable factual issue. The fact that Brooks and J.B. twice competed for the same positions, with Brooks outperforming him each time, also tends to support the contention that the two are similarly situated.

For these reasons, Brooks' prima facie discrimination case arising from the Supervisor of Systems Administration position survives summary judgment.

### iii. Quality Assurance Program

Pima County concedes all but the third and fourth *McDonnell Douglas* factors for the claim relating to the Quality Assurance program. The Court will only discuss the fourth factor, whether the plaintiff was treated less favorably than a similarly situated employee, which proves dispositive. *See Chuang*, 225 F.3d at 1123. It is undisputed that Pima County discontinued the Quality Assurance program and did not select a male employee to lead it. (Doc. 66, ¶¶ 51–52; Doc. 69, ¶ 52.) Without a similarly situated employee outside of Brooks' protected class who Pima County treated more favorably, the gender discrimination claim arising from the Quality Assurance program fails as a matter of law.[7]

---

[7] Moreover, as discussed in note 4, even if Brooks contends the events relating to the Quality Assurance program constitute retaliation, (*see* Doc. 82 at 12; Oral Argument), summary judgment is still warranted because Brooks' single EEOC charge does not include an allegation of retaliation. (*See* Doc. 64-64.) Any retaliation claim arising from the Quality Assurance program would fail because Brooks did not exhaust her administrative remedies. *See* 42 U.S.C. § 2000e–5; *Scott*, 888 F.3d at 1112 (retaliation is a discrete act requiring a separate allegation in an EEOC charge).

### 3. Pretext

After establishing a prima facie case of discrimination, the burden of production, but not persuasion, shifts to the defendant employer. *McDonnell Douglas Corp.*, 411 U.S. at 802. The employer must articulate some legitimate, nondiscriminatory reason for the challenged action. *Id.* If the employer does so, the plaintiff must show that the reason is pretextual. *Chuang*, 225 F.3d at 1124. The plaintiff may accomplish this "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

Brooks has raised genuine factual questions as to whether Pima County's reasons for the challenged actions are a pretext for discrimination. *See Chuang*, 225 F.3d at 1127. The Court need not address pretext for the Computing Architect position because Pima County failed to provide evidence supporting its "legitimate, nondiscriminatory reason" for selecting B.P. over Brooks.[8] *See McDonnell Douglas Corp.*, 411 U.S. at 802. For the Relationship Manager positions, Pima County asserts two reasons for hiring a male candidate over Brooks: higher interview scores and supervisory experience; and for the Supervisor of Systems Administration position, Pima County argues its legitimate reason for hiring J.B. was his supervisory experience. (Doc. 63 at 15, 16.) As discussed above, Brooks has already identified genuine issues of material fact regarding whether she had adequate supervisory experience.

In addition, Brooks has raised a genuine factual dispute regarding whether Pima County's "proffered explanation is unworthy of credence." *See Chuang*, 225 F.3d at 1124, 1127. First, Pima County presents inconsistent arguments regarding its reasons for not hiring Brooks. In its motion for summary judgment, Pima County relies in part on Brooks' alleged lack of supervisory experience as a reason for not hiring or promoting her. (*See* Doc. 63 at 15–16.) As discussed above, Brooks has already identified genuine issues of material fact regarding whether she had adequate supervisory experience.

---

[8] *See supra* Part I and note 6.

In its reply brief, Pima County doubles down on the distinction it created between "management" and "supervisory" experience. (Doc. 85 at 4.) Brooks contends that Pima County did not in fact distinguish "management" and "supervisory" experience. (Doc. 86 at 2–3.) Pima County's Relationship Manager job posting appears to support Brooks' contention by using "management" and "manage" far more than "supervise" and "supervisory" while also referring to the terms synonymously. (Doc. 64-27.)

At oral argument, however, Pima County abandoned supervisory experience as a reason for selecting male candidates instead of Brooks for the Relationship Manager positions but not for the Supervisor of Systems Administration position. The hiring process for the former positions required scored interviews while the latter position did not. (Doc. 66, ¶¶ 22, 33, 55.) When the hiring process for a position involved a scored interview, Pima County contends that it did not select Brooks because of her relatively lower score. Only when Pima County had no interview score to rely on does it contend that Brooks lacked adequate supervisory experience.

Second, Pima County presents inconsistent explanations regarding the Quality Assurance program. When Pima County responded to Brooks' EEOC charge, it stated Brooks *wanted* to lead the Quality Assurance program. On September 21, 2018, Pima County's IT Department CIO, D.H., stated in an affidavit to the EEOC that Brooks "will be placed into the leadership role over [the Quality Assurance] program as soon as she returns from vacation" and Brooks "felt that she could be happy and successful for 2+ years" leading the program. (Doc. 64-62.) Yet, when Brooks sued Pima County for not being able to lead the Quality Assurance program, Pima County stated that Brooks *refused* to lead it. On April 16, 2021, Pima County's IT Department Deputy Director, M.H., stated in an affidavit that "[Brooks] made it clear that she did not see QA . . . as a direction for her career at that point in time" and "the QA initiative was not pursued further." (Doc. 64-54.)[9]

---

[9] At oral argument, Brooks also argued that Pima County's reason for not placing her in charge of the Quality Assurance program lacked credence because Pima County failed to offer her the role when she returned from vacation. To support this, Brooks referenced

Third, the selection process for the Supervisor of Systems Administration position also tends to support Brooks' contention that Pima County's reasons for its employment actions are pretextual. After conducting interviews, Pima County selected the highest scoring interviewee for the positions of Relationship Manager 2017-764 and 2017-1130, and allegedly selected the highest scoring interviewee for the Computing Architect position.[10] (Doc. 66, ¶¶ 22, 33, 46.) All three hires were male. (*Id.*) For each position, Brooks received the second highest score. (Doc. 64-17, 64-23, 64-31.) Yet, when the Supervisor of Systems Administration position became available, Pima County held no interviews and instead reassigned to the position a male employee who Brooks consistently outperformed in interviews. (Doc. 69, ¶ 56.)

Taken together, a reasonable jury could conclude that Pima County's proffered reasons for the challenged employment actions lack credibility and are a pretext for gender discrimination against Brooks. And although Brooks offers statistical evidence to support her pretextual argument, (*see* Doc. 82, ¶ 14–16), the Court does not rely on those statistics in its decision. The Court also takes no position here on whether Brooks' statistical evidence is admissible at trial under Federal Rule of Evidence 403, 702, or 703.

**B.     Brooks' Partial Motion for Summary Judgment**

Brooks moved for summary judgment on her Title VII gender discrimination claims relating to the Relationship Manager 2017-764, Relationship Manager 2017-1130, and Supervisor of Systems Administration positions. (Doc. 82 at 1.) As discussed above, the parties raise genuine factual disputes that are essential to the prima facie case and pretextual

---

chats from October 2018 in which she asked her supervisors for an update on her leading the program. Although the Court has found that Brooks cannot proceed with a retaliation claim related to the Quality Assurance position, the Court concludes that the inconsistent positions taken by Pima County could constitute evidence of pretext.

[10] The selection process for the Computing Architect position included an initial scored interview and a final unscored interview. (Doc. 66 ¶ 36.) Pima County stated in its motion for summary judgment that it hired B.P. because he had a higher score in the initial interview and supervisory experience. (Doc. 63 at 15.) However, as noted previously, Pima County identifies no facts in the record—and the Court finds none—confirming that assertion.

- 14 -

arguments for these Title VII claims. The Court thus denies Brooks' motion. The final merits of the claims must be determined by the jury.

### C. Brooks' Remaining Motions

Two days before oral argument, Brooks filed two motions requesting to supplement the record. (Doc. 89; Doc. 90.) The Court does not rely on these supplemented materials in its analysis and thus denies both motions as moot.

## III. Conclusion

For the foregoing reasons, **IT IS ORDERED**:

1. Defendant's Motion for Summary Judgment (Doc. 63) is **GRANTED IN PART** and **DENIED IN PART**.
2. Plaintiff's Cross-Motion for Partial Summary Judgment (Doc. 82) is **DENIED**.
3. Plaintiff's Motion for Leave to Supplement Record on Her Cross-Motion for Partial Summary Judgment and Opposition to Defendant's Motion for Summary Judgment (Doc. 89) is **DENIED** as moot.
4. Plaintiff's First Motion for Leave To File Non-Electronic Exhibits (Doc. 90) is **DENIED** as moot.
5. Pursuant to the Court's August 4, 2021 Order (Doc. 59), the parties shall file a Joint Proposed Pretrial Order and any *Daubert* motions by October 27, 2022.
6. A status conference is set for November 17, 2022, at 4:30 p.m. Prior to the conference, the parties must meet to discuss preparation of the Joint Pretrial Order, identify issues for trial, and propose deadlines and a schedule for trial.

Dated this 27th day of September, 2022.

_____
Honorable Jennifer G. Zipps
United States District Judge